**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JESSICA P., | : | |
| | : | |
| | : | |
| plaintiff, | : | |
| | : | |
| v. | : | CASE NO. 3:21-cv-84(SRU) |
| | : | |
| KILOLO KIJAKAZI,[1] | : | |
| ACTING COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| defendant. | : | |

<u>**RECOMMENDED RULING ON PENDING MOTIONS**</u>

Jessica P. ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405(g).  The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated April 1, 2020.  Plaintiff timely appealed to this Court.

Currently pending are plaintiff's motion for an order reversing and/or remanding her case for a hearing (Dkt. #20) and defendant's motion to affirm the decision of the Commissioner.

---

[1] Andrew M. Saul was Commissioner of Social Security when this case was filed.  On July 9, 2021, Dr. Kilolo Kijakazi became Acting Commissioner.  Pursuant to Federal Rule of Civil Procedure 25(d), Acting Commissioner Kijakazi is automatically substituted as the defendant. *See* Fed. R. Civ. P. 25(d).

(Dkt. #26.) The Honorable Stefan R. Underhill referred these motions to the undersigned for a recommended ruling.

For the reasons that follow, the undersigned recommends that the plaintiff's motion to reverse, or in the alternative, remand be GRANTED and the Commissioner's motion to affirm be DENIED.

**STANDARD**

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981).[2] "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

---

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

Therefore, absent legal error, this Court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit Court of Appeals has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to an individual who has a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1). To determine whether a claimant is disabled

within the meaning of the SSA, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.[3]

To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  Id.[4]

---

[3] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.  The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.  20 C.F.R. § 416.920(a)(4)(i)-(v).

[4] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work."  Id.

## PROCEDURAL HISTORY[5]

Plaintiff initially filed for disability insurance benefits under Title II on October 17, 2018.  (R. 91.)[6]  Plaintiff alleged a disability onset date of May 6, 2018.  (R. 183.)  At the time of application, plaintiff alleged that she suffered from Anxiety, Gastrointestinal Disease, Hypothyroidism, Depression, Ulcers, and Abdominal pain and bloating.  (R. 81.)  The initial application was denied on November 13, 2018, and again upon reconsideration on January 15, 2019.  (R. 81-88,90-103).  Plaintiff then filed for an administrative hearing which was held by ALJ Louis Bonsangue (hereinafter the "ALJ") on December 23, 2019.  (R. 33-75.)  The ALJ issued an unfavorable decision on April 1, 2022.  (R. 15-31.)  Plaintiff filed a request for review with the Appeals Council on May 18, 2020.  (R. 180-82.)  The Appeals Council denied plaintiff's request for review on November 20, 2020.  (R. 1.) Plaintiff then filed this action seeking judicial review.  (Dkt. #1.)

_____

[5] The Court notes that during this litigation, plaintiff submitted a "Statement of Material Facts." (Dkt. #22.)  In conjunction with the motion to affirm filed in this matter, the Commissioner has responded to the statement of material facts and denies any non-factual assertion or argument contained therein. Otherwise, the Commissioner adopts the facts as written.  (Dkt. #26-1.)  The Court has reviewed the statement of facts and has relied upon those facts, as well as the Court's independent review of the record, in fashioning this ruling. In light of the stipulation, the Court will note include a full recitation of the facts and medical evidence in this recommended ruling.

[6] The Court cites pages within the administrative record as "R. ___."

On April 1, 2020, the ALJ issued an opinion in which he found that the plaintiff "has not been under a disability, as defined by the Social Security Act, from May 6, 2018, through the date of [his] decision." (R. 26.)

At Step One, the ALJ found that plaintiff did not engage in substantial gainful activity from May 6, 2018, the alleged onset date through the date of the opinion.  (R. 17.)  At Step Two, the ALJ found that plaintiff had the following severe impairments: ulcers, obesity, major depressive disorder, and generalized anxiety disorder.  (R. 17.)

At Step Three, the ALJ found that plaintiff's impairments, singularly and combined, did not meet or medically equal the severity of a listed disability in 20 C.F.R. § 404, Subpart P., App. 1.  (R. 18.)  The ALJ specifically noted that he considered plaintiff's obesity under SSR 19-2, plaintiff's ulcers under listing 5.06, and plaintiff's mental health impairments under listings 12.04 and 12.06. (R. 18-19.)

Next, the ALJ determined that plaintiff had the residual functional capacity (RFC) to

> Perform light work as defined in 20 CFR 404.1567(b) except the claimant cannot climb ladders, ropes or scaffolds.  The claimant can perform only simple, routine repetitive tasks for two-hour increments with regular breaks so long as there is no strict adherence to time or production quotas.  The claimant can only tolerate minor changes in the work routine on a day-to-day basis.

(R. 20.)

At Step Four, the ALJ found that plaintiff was not capable of performing her past relevant work. (R. 25.)  Finally, at Step Five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy. (R. 25-26.)  Thus, the ALJ concluded that plaintiff was not disabled from the onset date of May 6, 2018 through the date of the opinion.  (R. 26-27.)

## DISCUSSION

In seeking the reversal or remand of the Commissioner's decision, plaintiff argues that the ALJ erred in the following ways: the ALJ failed to properly evaluate the Medical Opinion Evidence and the ALJ failed to properly evaluate plaintiff's subjective statements.  (Dkt. #21 at, 2-14.)   As discussed below, the Court finds that the ALJ failed to properly evaluate the medical opinion evidence and therefore recommends that plaintiff's motion to reverse or remand be GRANTED and the Commissioner's motion to affirm be DENIED.

### I.   The ALJ's Evaluation of the Medical Opinion Evidence

For claims filed before March 27, 2017, the regulations require the application of the "treating physician rule," under which treating source opinions could receive controlling weight provided they were not inconsistent with other substantial evidence in the record.  *See* 20 C.F.R. § 404.1527(c)(2).

However, the treating physician rule does not apply to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. Because plaintiff filed her claim in 2018, the ALJ was required to evaluate opinion evidence in accordance with the new regulations, 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c.

The new regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The ALJ will consider any medical opinions according to certain factors, including: (1) whether objective medical evidence supports and is consistent with the opinion; (2) the relationship between the medical source and claimant; (3) the medical source's specialty; and (4) other factors that "support or contradict a medical opinion[.]" Id. §§ 404.1520c(c), 416.920c(c). The ALJ must explain how he considered the "supportability" and "consistency" factors in the evaluation, but the ALJ need not explain how he considered the secondary factors unless the ALJ finds that two or more medical opinions regarding the same issue are equally supported and consistent with the record but not identical. 20 C.F.R. § 404.1520c(b).

For the "supportability" factor, "[t]he more relevant the objective medical evidence and supporting explanations presented

by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be." Id. §§ 404.1520c(c)(1), 416.920c(c)(1).  For the "consistency" factor, "[t]he more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative finding(s) will be."  Id. §§ 404.1520c(c)(2), 416.920c(c)(2).

Courts within the Second Circuit have only recently begun to address appeals of disability claims filed after March 27, 2017, to which the deferential treating physician rule does not apply.  However, the essence of the treating physician rule endures, in that a treating source's opinion can often offer key insights based on the treatment relationship.  In fact, courts have held that "while the treating physician's rule was modified, the essence of the rule remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar." Acosta Cuevas v. Comm'r of Soc. Sec., No. 20CV0502AJNKHP, 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021). See also Brian O. v. Comm'r of Soc. Sec., No. 1:19-CV-983 (ATB), 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020)("Although the new regulations eliminate the perceived hierarchy of medical

sources, deference to specific medical opinions, and assigning weight to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions. The two most important factors for determining the persuasiveness of medical opinions are consistency and supportability, which are the same factors that formed the foundation of the treating source rule.")(internal quotations and citations omitted).

Plaintiff argues that in this case the ALJ failed in his evaluation of the medical opinion evidence in a variety ways. First, plaintiff argues that the ALJ erred by failing to reflect certain limitations of Dr. Traboulsi's opinion, which the ALJ found to be partially persuasive, in the RFC analysis. (Dkt. #21 at 3.) Second, plaintiff argues that the ALJ erred in rejecting the remaining opinions of Dr. Traboulsi and all of the opinions of Nurse Practitioner Sammy and L.C.S.W. Dipesia. (Dkt. # 21 at 3-4.) Finally, plaintiff argues that the ALJ erred in finding the opinions of the non-examining State Agency Consultants to be persuasive. (Dkt. #21 at 5-8.)

The Commissioner responds to plaintiff's arguments regarding Dr. Traboulsi and the opinions of Nurse Practitioner Samy and L.C.S.W. Dipesia by arguing that the opinions rendered were out of line with their treatment notes, which the Commissioner classifies as generally benign in nature. (Dkt.

10

#26-1 at 8-9.)  The Commissioner alleges that the ALJ's
restrictions found in plaintiff's RFC took all the concerns into
account and that plaintiff just has a differing view of the
evidence in the record. (Dkt. 26-1 at 7-8.)  Finally, the
Commissioner argues that the State Agency Consultant findings
are not invalid simply because they reviewed only a part of the
medical evidence contained in the record.  (Dkt. #26-1 at 8.)

    After considering the arguments and reviewing the record,
the undersigned is persuaded by the intersection of two of
plaintiff's arguments.  First, the persuasiveness level afforded
to the State Agency Consultants in light of the timing and
foundation of their opinions.  Second, the level of
persuasiveness provided to the State Agency Consultants'
psychiatric opinions even though the State Agency Consultants
had not seen or examined the plaintiff.  Taken together, the
Court is persuaded that the ALJ's decision is not based on sound
legal principles and based on substantial evidence.  Having
determined that the RFC determination in this case is
questionable, the undersigned recommends that this matter be
remanded for further proceedings.

    Under the new regulations the ALJs are asked to assess
medical opinion evidence based on several factors.

    [W]hen a medical source provides one or more medical
    opinions, the Commissioner will consider those medical
    opinions from that medical source together using the

factors listed in paragraphs (c)(1) through (c)(5) of
[20 C.F.R. §404.1520c]. Those factors include: (1)
supportability; (2) consistency; (3) relationship with
the claimant, including the length of the treatment
relationship, the frequency of examinations, purpose and
extent of the treatment relationship, and the examining
relationship; (4) specialization; and (5) any other
factors that "tend to support or contradict a medical
opinion or prior administrative medical finding."

Jacqueline L. v. Comm'r of Soc. Sec., 515 F. Supp. 3d 2, 7
(W.D.N.Y. 2021)(quoting 20 C.F.R. §404.1520c(c)).

While "the new regulations eliminate the perceived
hierarchy of medical sources, deference to specific medical
opinions, and assigning weight to a medical opinion, the ALJ
must still articulate how he or she considered the medical
opinions and how persuasive he or she finds all of the medical
opinions." Jacqueline L., 515 F. Supp. at 8. Additionally, "The
ALJ may—but is not required to—explain how he considered the
remaining factors. However, when the opinions offered by two or
more medical sources about the same issue are both equally well-
supported ... and consistent with the record ... but are not
exactly the same, the ALJ will articulate how he considered the
remaining factors in evaluating the opinions." Id. (internal
quotations and citations omitted).

Courts in the Second Circuit have advised that ALJ's should
be cautious "given the heightened duties surrounding mental
health, and the well-known dangers of relying too heavily on a
snapshot of a claimant's mental health given the cyclical and

sporadic nature of mental health symptoms." <u>Acosta Cuevas v.</u>
<u>Comm'r of Soc. Sec.</u>, No. 20CV0502AJNKHP, 2021 WL 363682, at *12
(S.D.N.Y. Jan 29, 2021).  Indeed, under the old treating
physician framework, but still relevant to the discussion here,
it has been held that "[i]n the context of a psychiatric
disability diagnosis, it is improper to rely on the opinion of a
non-treating, non-examining doctor because the inherent
subjectivity of a psychiatric diagnosis requires the physician
rendering the diagnosis to personally observe the patient."
<u>Ortiz v. Colvin</u>, No. 3:15CV00956(SALM), 2016 WL 4005605, at *8
(D.Conn. July 26, 2016)(quoting <u>Velazquez v. Barnhart</u>, 518 F.
Supp. 2d 520, 524 (W.D.N.Y. 2007)).

The ALJ's main argument regarding his assignment of
persuasiveness in this case relates to alleged internal
inconsistency between the three treating source opinions in the
record and their longitudinal treatment notes in the record.
Instead, the ALJ found that the treatment notes in the record
are supportive of the opinions of the State Agency Consultants.
The Court is troubled by the circular logic involved in this
determination. (R. 23-25.)  The treatment notes in the record
will undoubtably be supportive of the State Agency Consultants'
opinions, in large part because the treatment notes are all the
consultants had to base their opinions on.  The Court finds that

the ALJ's reliance on the opinions of the state reviewing
non-examining and consulting physicians should be viewed
with some skepticism. Where, as here, plaintiff has an
established treatment history with not just one,
but [three], treating physicians, it is improper to rely
on the opinion of a non-treating, non-examining doctor
because the inherent subjectivity of a psychiatric
diagnosis requires the physician rendering the diagnosis
to personally observe the patient.

Ortiz, 2016 WL 4005605, at *8 (internal quotation omitted).

The Court additionally notes that the ALJ relied on his
review of the medical treatment notes in determining the
persuasiveness of the mental health medical source statements.
In each instance the ALJ pointed out that the opinions were
inconsistent with the record as a whole which the ALJ noted
showed plaintiff with a "normal mood, normal hygiene, normal
concentration, normal memory, normal fund of knowledge, normal
speech, normal through process, normal thought content, normal
insight and normal judgment without perceptual abnormalities."
(R. 23 and 24.)[7]  However, a review of the cited records
indicates that they may not be relevant to the consistency and
supportability of the medical source opinions.  At multiple
points the ALJ cites exhibits 1F and 7F as evidence of
plaintiff's normal functioning. (R. 23-25.) However, both of

---

[7] Each of plaintiff's mental health treaters provided similar clinical
findings, such that it appears as though their opinions are consistent
with each other. (See R. 314, 317, 438-39, and 591). Under 20 C.F.R.
§404.1520c(c)(2), the more consistent medical opinions are "with the
evidence from other medical sources and nonmedical sources in the
claim, the more persuasive the medical opinions . . . will be."

those exhibits are from physical medical examinations for
plaintiff's gastrointestinal issues and presumably any brief
evaluation of her affect during the appointments seems of
marginal relevance to her overall ability to function in a work
environment in light of her mental health concerns. (R. 279,
287, 290, 395.)  Even a sampling of the mental health treatment
notes does not seem to indicate more than an appearance of
normality at the time of the appointments.  Observing that
plaintiff "presents neatly dressed with good hygiene and
grooming," or that plaintiff's "thought process is linear and
future-oriented" does not appear to indicate overall ability to
function in a work setting. (R. 553 and 561.)  As the Second
Circuit has stated regarding mental health impairments "a one-
time snapshot of a claimant's status may not be indicative of
her longitudinal mental health." Estrella v. Berryhill, 925 F.3d
90, 98 (2d Cir. 2019).

Additionally, the Court notes that while plaintiff did not
expressly raise an argument in relation to the development of
the record, "the Second Circuit has explained that it 'is of
heightened importance' in the context of mental health
impairments that an ALJ make an 'attempt to reconcile or grapple
with the apparent longitudinal inconsistencies in ... mental
health [records.]" Demarkey v. Saul, No. 3:19 CV 711 (RMS), 2020
WL 2111932, at *12 (D. Conn. May 4, 2020)(quoting Estrella, 925

F.3d at 97).  It was incumbent on the ALJ in a case such as this one to go back to the treating sources and seek further information and explanation regarding the seemingly benign treatment notes and more severe assessed limitations.

## CONCLUSION

For the foregoing reasons, the Court recommends that plaintiff's motion to reverse or remand the Commissioner's decision be GRANTED and the defendant's motion to affirm the same be DENIED.

This is a recommended ruling. **Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of being served with this order**. *See* Fed. R. Civ. P. 72(b)(2). Failure to object within fourteen (14) days may preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), & 72; D. Conn. L. Civ. R. 72.2(a); F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566, 569 (2d Cir. 1995); Small v. Sec'y of H.H.S., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

SO ORDERED this 4th day of March, 2022 at Hartford, Connecticut.

_____/s/_____

Robert A. Richardson
United States Magistrate Judge